UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOHN A. SORRENTINO,<br><br>        Plaintiff,<br><br>  v.<br><br>JO ANNE B. BARNHART, Commissioner,<br>Social Security Administration,<br><br>        Defendant. | CASE NO.   C05-5603RJB<br><br>REPORT AND<br>RECOMMENDATION<br><br>Noted for June 16, 2006 |

This matter has been referred to Magistrate Judge J. Kelley Arnold pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by <u>Mathews, secretary of H.E.W. v. Weber</u>, 423 U.S. 261 (1976).  After carefully reviewing the record, the undersigned recommends that the matter be remanded for further consideration by the administration.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, John Sorrentino, was born in 1947.  He graduated from High School and soon thereafter became a service member of the United States Army.  In the Army, plaintiff completed basic training and additional training as a heavy equipment engineer.  He was subsequently stationed in Vietnam during the war, where he was flown by helicopter to remote locations to fix and repair heavy equipment.   He was in Vietnam for only a short time ( two to three months) before he was called back home due to his family's financial hardship when his younger sister was hospitalized.

After his return from Vietnam, plaintiff was eventually discharged from the Army and he went to work in the garment making industry, in a job that he worked at while he was in High School.  He worked in this industry, in a factory operated by his mother, from 1968 to 1975.  In 1975 he was briefly employed as a rigger  for a boat builder, but he returned to the garment industry, working as an assistant manager of

REPORT AND RECOMMENDATION
Page - 1

the shipping department in the same year, and he continued in that job until 1980. He quit this job on the basis that he "couldn't deal with people." His only other work history of record consisted of several months as a cabinet installer in 1988, but this was properly considered an unsuccessful work attempt by the administration.

On June 23, 1999, Mr. Sorrentino filed an application for Title II disability benefits. Plaintiff's date last insured for Title II disability benefits was December 31, 1985. He alleged a disability onset date of December 15, 1980, due to Post Traumatic Stress Disorder ("PTSD"). Mr. Sorrentino's first ALJ hearing was conducted by ALJ Musseman who issued an unfavorable decision on December 21, 2000. Mr. Sorrentino eventually filed a Complaint for Judicial Review with this Court, and based on the stipulation of the parties, an Order of Remand was issued by the Court on September 9, 2004, directing the Commissioner to further develop the record and conduct a de novo hearing. Tr. 241-43.

Plaintiff's second ALJ hearing was conducted by ALJ Dethloff on February 7, 2005. Witnesses included Mr. Sorrentino and his wife. ALJ Dethloff issued a Notice of Recommended Decision on February 15, 2005, denying Mr. Sorrentino's application for disability benefits. On August 9, 2005, the Appeals Council adopted the ALJ's decision, finding that Mr. Sorrentino was not disabled at any time through his date last insured. The Appeals Council thus found there was insufficient evidence to establish a severe impairment for the period December 15, 1980 through December 31, 1985. A timely appeal to this Court followed.

Now, plaintiff again alleges the administration erred in its consideration of his application for disability benefits. Specifically, plaintiff alleges the ALJ's conclusion that plaintiff suffered no medically determinable impairment is not supported by the record and it is contrary to law. This court agrees.

## DISCUSSION

This Court must uphold the Secretary's determination that plaintiff is not disabled if the Secretary applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v.

1  Sullivan, 772 F. Supp. 522, 525 (E.D. Wash. 1991).  If the evidence admits of more than one rational
2  interpretation, the Court must uphold the Secretary's decision.  Allen v. Heckler, 749 F.2d 577, 579 (9th
3  Cir. 1984).

4     The claimant bears the burden of proving that she is disabled within the meaning of the
5  Social Security Act.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  Disability is defined as the
6  "inability to engage in any substantial gainful activity by reason of any medically determinable physical or
7  mental impairment which can be expected to result in death or which has lasted, or can be expected to last
8  for a continuous period of not less than twelve months[.]" 42 U.S.C. § 423(d)(2)(A), 1382c(a)(3)(A); 20
9  C.F.R. §416.905.

10    In evaluating Plaintiff's claim, the ALJ commenced the five-step sequential evaluation process for
11 determining whether a claimant is disabled within the meaning of the Social Security regulations.  Meanel v.
12 Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999); Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §
13 416.920 (2000).  The Plaintiff has the burden of proof at steps one through four; at step five the burden
14 shifts to the Commissioner to show that Plaintiff can perform work that exists in significant numbers in the
15 national economy.  Here, the ALJ and the Appeals Council erred in finding plaintiff did not satisfy his
16 burden at step-two.

17    Step-two of the administration's evaluation process requires the ALJ to determine whether an
18 impairment is severe or not severe. 20 C.F.R. §§ 404.1520, 416.920 (1996).  An impairment is "not severe"
19 if it does not "significantly limit" the ability to do basic work activities. 20 C.F.R. §§ 404.1521(a),
20 416.921(a).  The  Social Security Regulations and Rulings, as well as case law applying them, discuss the
21 step-two severity determination in terms of what is "not severe."  According to the Commissioner's
22 regulations, "an impairment is not severe if it  does not significantly limit [the claimant's] physical ability to
23 do basic work  activities,"  20 C.F.R. §§ 404.1520(c),  404.1521(a)(1991). Basic work activities are
24 "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting,
25 pushing, pulling, reaching,  carrying or handling." 20 C.F.R. § 140.1521(b); Social Security Ruling 85-  28
26 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" **only** if the
27 evidence establishes a slight abnormality that  has "no more than a minimal effect on an individuals ability to
28 work."  See SSR  85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1998) (adopting SSR

85-28)(emphasis added).

The ALJ in this case first noted that Mr. Sorrentino was insured for disability benefits through December 31, 1985 and that Mr. Sorrentino needed to establish disability on or before that date. After reviewing the regulations and the evidence on record, the the ALJ found that Mr. Sorrentino did not have a medically determinable impairment prior to his date last insured, which was demonsntrated to continue to or past that date. Accordingly, the ALJ found plaintiff not disabled and the application for disability benefits was denied. The undersigned's review of the evidence and case law does not support the ALJ's or the Appeals Council's step-two denial.

The Eight Circuit addressed a similar set of facts in Jones v. Chater, 65 F.3d 102 (8th Cir. 1995). The claimant in Jones, a Vietnam war veteran, argued that his disability was caused by post-traumatic stress disorder stemming from his military service. The record in that case was barren of any medical reports mentioning mental difficulties until 1991 when Jones sought diagnosis and treatment for possible PTSD. The ALJ concluded that, despite the recent PTSD diagnosis and statements by Jones' relatives regarding dramatic changes in his personality since his service in Vietnam, there was not medical evidence showing the Jones' PTSD had arisen by 1975, his last date insured. The Eight Circuit reversed the district court's affirmation of the ALJ's decision, and remanded the matter to allow the administration the opportunity to properly address the medical evidence which supported Jones' allegations. The court ruled, "Retrospective medical diagnoses constitute relevant evidence of pre-expiration disability," and "retrospective medical opinions alone will usually not suffice unless the claimed disability date is corroborated, as by subjective evidence from lay observers like family members." Jones v. Chater, 65 F.3d 102, 104 (8th Cir. 1995).

The Eighth Circuit's decision in Jones is applicable to this matter. The ALJ did not mention or discuss the 8th Circuit's decision in Jones, nor did the Appeals Council, despite the fact that plaintiff's counsel brought the case to the Appeals Council's attention. The decision is significant because it clearly states that retrospective medical opinions, when corroborated by relevant lay witness observations, need to be considered in conjunction with one another. Here, the ALJ did not assess the retrospective medical opinions along with the corroborating statements from plaintiff's friends and family members when he assessed plaintiff's impairments at step-two fo the administrative process.

The medical evidence presented by plaintiff supports a step-two PTSD impairment. Plaintiff

REPORT AND RECOMMENDATION
Page - 4

testified that he first learned about PTSD when he was befriended in 1997 by another Vietnam war veteran. Soon thereafter he sought medical treatment at the Peninsula Community Mental Health Center Veterans Program, receiving treatment for PTSD. Mr. Sorrentino reported daily intrusive memories of Viet Nam for many years, with common activities calling up clear, intrusive memories.  His counselor,  Ms. Davick, reported the memories to be so severe that Mr. Sorrentino rarely left his house.  Ms. Davick described Mr. Sorrentino as unusually emotionally numb, with a restricted range of affect.  Mr. Sorrentino reported sleep disturbance in all phases since his discharge from the military, and he had kept a gun by his bed for years. Ms. Davick reported that irritability and problems with anger had played major roles in Mr. Sorrentino's life since the war.  Ms. Davick concluded that Mr. Sorrentino had chronic and severe PTSD and that he had minimized his trauma from his experience in Vietnam.  Tr. 90-92.

On June 22, 1998, Mr. Sorrentino was admitted to the Inpatient PTSD Treatment Center of the Seattle Veterans Affairs Medical Center.  Mr. Sorrentino was first referred for initial PTSD treatment one year earlier.  Mr. Sorrentino reported being able to work only three months out of the past eighteen years, and he described a pattern of severe isolation and very limited activities.  Dr. Del Toro reported Mr. Sorrentino's GAF score to be 25, indicating a serious impairment.  On June 30, 1998, the care coordinator reported that Mr. Sorrentino's anxiety had become worse since his admission to the unit.  On July 8, 1998, Dr. Petrie, the staff psychiatrist, reported that Mr. Sorrentino was exhibiting significant decrease in anxiety and in obsessive/ruminative worries and motor agitation on new medication.  On July 11, 1998, Mr. Sorrentino was discharged from the PTSD treatment unit with referrals for alcohol and mental health treatment and with medications.

On October 2, 1998, Mr. Sorrentino was examined by Dr. Petrie at the VA Medical Center. Mr. Sorrentino was reporting good control of insomnia on medication, but he also reported vivid, disturbing dreams on nights when he had to skip his medication. Dr. Petrie reported improving symptoms on medication.

On July 16, 1999, Dr. Petrie noted Mr. Sorrentino's report of good control of depression, with periods of more intense depressed mood but less severe and of shorter duration than previously.  Dr. Petrie also reported a decrease in anxiety symptoms with medication, and he noted Mr. Sorrentino's concern about dependence on psychiatric medication.  By January 8, 1999, Mr. Sorrentino was reporting increased

REPORT AND RECOMMENDATION
Page - 5

energy and interest in social interactions, but with tearful episodes at times and still spending much time alone.

On November 14, 1999, Dr. Petrie, the Medical Director of the Evaluation and Brief Treatment PTSD Unit of the Department of Veterans Affairs Puget Sound Health Care System, wrote a letter report to counsel regarding his care and treatment of Mr. Sorrentino. Dr. Petrie reported that he had evaluated Mr. Sorrentino during his hospitalization at the Seattle Veterans Affairs Medical Center from June 22, 1998 to July 11, 1998, and during follow-up visits to the outpatient clinic of the medical center. Dr. Petrie also reviewed the medical evaluation of Dr. Warner, conducted in connection with Mr. Sorrentino's application for compensation and pension from the Department of Veterans Affairs. Dr. Petrie reported that Mr. Sorrentino's symptoms of post traumatic stress disorder could be expected to produce significant impairment in his ability to understand, remember and carry out both detailed and complex job instructions, and to result in a poor to no ability to behave in an emotionally stable manner, relate predictably in social situations and demonstrate reliability in a work setting. Dr. Petrie reviewed the available psychiatric history, Mr. Sorrentino's dates of exposures to traumatic events during military service and his knowledge of the natural history of PTSD, and he concluded that, more likely than not, Mr. Sorrentino met the Listing of Impairments criteria since at least the end of 1980, when he was last gainfully employed on a regular basis. Tr. 105-106.

On October 18, 2000, Mr. Sorrentino participated in a psychiatric examination by Dr. Backus in connection with his application for compensation and pension from the Department of Veterans Affairs. Tr. 137-39. Dr. Backus noted that Mr. Sorrentino was then rated at 70% service-connected for PTSD. Dr. Backus reported that Mr. Sorrentino remained severely impaired after his hospitalization at the PTSD unit. Dr. Backus' assessment was of post traumatic stress disorder, chronic and severe; major depressive disorder, chronic, severe and related intimately to the PTSD; alcohol abuse, in remission; and marijuana abuse, in remission. The GAF was assessed at 35. Dr. Backus recommended permanent disability for Mr. Sorrentino's PTSD, and he saw him as "totally disabled."

On March 5, 2004, Bill Maier, MSW, reported that Mr. Sorrentino had attended 157 counseling sessions since 1997. Mr. Maier reviewed letters of diagnosis from Pam Davick, M.A. and Dr. Petrie. It was Mr. Maier's opinion that Mr. Sorrentino met the Listing of Impairments criteria for PTSD since at

REPORT AND RECOMMENDATION
Page - 6

1  least the end of 1980, when he was last gainfully employed. Tr. 188.

2  In January 2005, Mr. Sorrentino was evaluated by Dr. Gustafson, a psychologist. Dr. Gustafson
3  reported on the sources of information he reviewed, including reports from treating, evaluating and
4  examining medical experts; lay witness statements; the prior unfavorable ALJ decision rendered in Mr.
5  Sorrentino's Social Security disability case; an hour long interview with Mr. Sorrentino, and an hour long
6  interview with his wife of 34 years. Tr. 291-92. Dr. Gustafson's diagnoses included chronic post
7  traumatic stress disorder and a mood disorder not otherwise specified. Regarding the onset date of Mr.
8  Sorrentino's disabling condition, Dr. Gustafson noted that the onset rested on information provided by Mr.
9  Sorrentino and his wife. He noted that both described symptoms often associated with post traumatic
10 stress disorder dating back to the 1970s, including increasing social isolation, chronic anxiety and tension,
11 sleep disturbance, the use of alcohol and marijuana essentially to numb pervasive feelings of anxiety,
12 difficulty maintaining employment, startle responses, increased anger and aggression, and nightmares. Tr.
13 295.

14 Given the above medical evidence, in combination with the third party statements from family and
15 friends regarding Mr. Sorrentino's symptoms and the work history record, it was error for the ALJ to find
16 that Mr. Sorrentino failed to produce sufficient evidence to support his allegations of a severe impairment
17 caused by PTSD at step-two of the administrative process. The ALJ framed his analysis by stating that a
18 claimant cannot be found disabled on "only lay testimony and retrospective opinions." Tr. 210. This
19 analysis is inconsistent with the Eighth Circuit's opinion in <u>Jones v. Chater</u>, *supra*, which the court finds
20 persuasive. In turn, the Appeals Council erred when it adopted the ALJ's findings and conclusions based
21 on this flawed premise. The retrospective medical evidence presented by plaintiff, in conjunction with the
22 other evidence of record (the medical evidence, his work history and the lay witness testimony and
23 statements) should have been considered as directed by the Eighth Circuits decision in <u>Jones</u>.

24 This matter was previously remanded by the court based on a stipulation of the parties. Plaintiff
25 argues now that the matter should not be remanded again for further proceedings and that the court should
26 exercise its discretion to reverse and remand the matter for an award of appropriate benefits. The decision
27 whether to remand a case for additional evidence or simply to award benefits is within the discretion of the
28 court. <u>Swenson v. Sullivan</u>, 876 F.2d 683, 689 (9th Cir.1989) (*citing* <u>Varney v. Secretary of HHS</u>, 859

REPORT AND RECOMMENDATION
Page - 7

1  F.2d 1396, 1399 (9th Cir., 1988).  In <u>Varney</u>, the Ninth Circuit held that in cases where the record is fully
2  developed, a remand for further proceedings is unnecessary.  <u>Varney</u>, 859 F.2d at 1401. *See also* <u>Reddick
3  v. Chater</u>, 157 F.3d 715, 728-730 (9th Cir. 1998)(case not remanded for further proceedings because it was
4  clear from the record claimant was entitled to benefits); <u>Swenson</u>, 876 F.2d at 689 (directing an award of
5  benefits where no useful purpose would be served by further proceedings); <u>Rodriguez v. Bowen</u>, 876 F.2d
6  759, 763 (9th Cir.1989) (same); <u>Winans v. Bowen</u>, 853 F.2d 643, 647 (9th Cir.1987) (accepting
7  uncontradicted testimony as true and awarding benefits where the ALJ failed to provide clear and
8  convincing reasons for discounting the opinion of claimant's treating physician).

9       A step-two case does not lend itself well for a reversal and award of benefits by the court.  Because
10 the administration has not properly addressed steps two through five, the record is incomplete.   The matter
11 must be remanded for further consideration.  Given the more recent medical records supporting a finding
12 that Mr. Sorrentino's PTSD would meet a listed impairment and the apparent fact that his condition has
13 grown worse over the years, not better, the administration must face the difficult task of determining the
14 severity of Mr. Sorrentino's impairment during the relevant period.  Remanding the matter to the
15 administration for further consideration of the matter consistent with this recommendation is appropriate.

16 <u>CONCLUSION</u>

17      In sum, the Court should REMAND the matter for further consideration.  Pursuant to 28 U.S.C. §
18 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from
19 service of this Report to file written objections. *See also* Fed.R.Civ.P. 6.  Failure to file objections will
20 result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).
21 Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for
22 consideration on **June 16, 2006**, as noted in the caption.

23      DATED this 23rd day of May, 2006.

                    /s/ J. Kelley Arnold
                    J. Kelley Arnold
                    U.S. Magistrate Judge